IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MILTON KEITH PERKINS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00901 |
| ) | Judge Aleta A. Trauger |
| **DAMON HININGER et al.,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

Before the court is plaintiff Milton Keith Perkins' Motion for Leave to File Supplemental Pleading. (Doc. No. 63.) For the reasons set forth herein, the motion will be denied.

**I.    BACKGROUND**

Plaintiff Perkins, an inmate in the custody of the Tennessee Department of Corrections ("TDOC") originally filed this lawsuit on November 24, 2021. (*See* Doc. No. 1, at 14; Doc. No. 9, at 7 n.3 (applying prison mailbox rule).) The original Complaint asserted claims under 42 U.S.C. § 1983 against CoreCivic, Damon Hininger, in his capacity as President and Chief Executive Officer of CoreCivic, Dr. [f/n/u] Hancock, and John Doe, M.D., based on alleged violations of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Generally, the plaintiff alleged that prison officials and prison medical personnel were deliberately indifferent to his serious medical needs, insofar as they delayed the diagnosis and treatment of what turned out to be a cancerous tumor on his face, and then delayed or failed to provide necessary follow up treatment once the tumor was removed.

Because the plaintiff is a prisoner and proceeds *in forma pauperis*, the court conducted an initial review of the original Complaint and dismissed all claims that accrued before November

24, 2020 as barred by the applicable one-year statute of limitations; dismissed the claims against the named defendants, in their individual capacity, that accrued between November 24, 2020 and December 28, 2020 for failure to state a claim for which relief may be granted; and dismissed all official-capacity claims against all defendants for failure to state a claim for which relief could be granted. (*See* Doc. No. 9, at 14.) The court also denied the plaintiff's request for a temporary restraining order and preliminary injunction. At the same time, however, the court left the case open and granted the plaintiff leave to amend his pleading to "more fully develop his Section 1983 claims alleging deliberate indifference to the plaintiff's serious medical needs by as-yet [un]identified defendants in Tennessee beginning on December 28, 2020 to the present." (*Id.* at 20.)

The plaintiff thereafter filed his First Amended Complaint, naming as defendants Nurse Practitioner Ollie Herron, Corizon, LLC ("Corizon"), the Commissioner of the Tennessee Department of Correction ("TDOC"), and CoreCivic. (Doc. No. 12.) In this pleading, the plaintiff realleged the facts asserted in the original Complaint but also added facts pertaining to the treatment of his cancer and related problems with his eyes dating from December 28, 2020 through March 30, 2022, when he was transferred from Hardeman County Correctional Facility ("HCCF") to Riverbend Maximum Security Institute ("RMSI"). (*See* Doc. No. 12.) The court conducted an initial review of first Amended Complaint and found that it stated a colorable claim under § 1983 against Herron in her individual capacity; against CoreCivic (which operates HCCF) and Corizon (which is alleged to be the contractor that provides medical care for inmates in TDOC custody), based on a purported policy of prohibiting treatment of more than one ailment per sick call request, per day, by any inmate, without exception; and against the TDOC Commissioner in her official capacity based on the same alleged policy, but only insofar as the plaintiff sought prospective injunctive relief in connection with that policy. The court also found that the Amended Complaint stated colorable claims under state law over which the court has supplemental jurisdiction. All

other claims were dismissed. (Doc. No. 13; *see also* Order, Doc. No. 14.)

Following the filing of the Amended Complaint, all of the remaining defendants (Herron, the Commissioner, Corizon, and CoreCivic) filed Motions to Dismiss (or partially dismiss). (Doc. Nos. 34, 38, 42.) In Response, the plaintiff sought and was granted leave to file a Second Amended Complaint ("SAC"). (Doc. No. 50.) This filing prompted the denial without prejudice of the then-pending motions and the filing of a second round of motions to dismiss, in whole or in part, the claims set forth in the SAC. (*See* Doc. Nos.49, 51, 53, 70.) In this iteration of his pleading, the plaintiff states that he was told by a nurse that Corizon LLC was "no longer the healthcare provider for the Tennessee Department of Correction" and that, instead, Centurion of Tennessee LLC ("Centurion") has "contracted with the State of Tennessee" to provide healthcare services for TDOC. (Doc. No. 50 ¶¶ 2–3, 14.) He omits Corizon as a defendant and adds Centurion in its place. The plaintiff continues to assert claims under federal and state law based on the medical care (or lack thereof) he received through March 2022. (Doc. No. 50 ¶¶ 17–54.)[1] The various Motions to Dismiss the SAC are still pending.

Shortly after filing the SAC, the plaintiff filed his Motion to Supplement Amended Complaint.[2] The Statement of Facts in the proposed Supplemental Complaint ("PSC") begins with what was paragraph 47 in the SAC. Paragraphs 1 through 8 of the PSC track paragraphs 47 through 54 of the SAC, which ends when the plaintiff was transferred to RMSI in March 2022. The plaintiff

---

[1] The plaintiff's Certificate of Service and signature on the Motion to Amend and SAC indicate it was placed in the mail around October 10, 2022.

[2] Although the court received the documents on January 12, 2023, the plaintiff apparently intended to file the Motion to Supplement on November 21, 2022, which is the date he mailed copies of his documents to the defendants, but he neglected to submit them to the court at the same time. (*See* Doc. No. 63-1, Jan. 9, 2023 Cover Letter; Doc. No. 63-2, Dec. 20, 2022 Letter to Perkins from A. Mize.)

seeks to supplement his pleading with new allegations stating that he went through sick-call procedures at RMSI and was scheduled for, and attended, an appointment with an ophthalmologist at Meharry Medical Center on June 24, 2022, to address the problem with his right eye that he had been trying to have treated since he first noticed the problem in November 2021. The ophthalmologist diagnosed the plaintiff as having a "severed" macula in his right eye "due to a gel build-up around the Macular." (Doc. No. 63-3 ¶¶ 9–10.) The doctor notified the plaintiff that the longer the problem went untreated, the less likely it could be corrected surgically. He referred the plaintiff to a surgeon who performs this type of surgery, who saw the plaintiff for the first time on August 29, 2022. (*Id.* ¶¶ 12–14.) The surgeon reiterated the necessity of moving quickly to correct the problem in order to restore the plaintiff's vision in his right eye. Surgery was scheduled for October 24, 2022, at 12:00 noon. (*Id.* ¶ 16.)

The day the plaintiff was supposed to be transported to the medical center for his surgery, his Pod Supervisor, Sergeant Stokes, began calling intake staff around 10:00 a.m. but was unable to get anyone there to answer the phone. Sergeant Stokes called the medical department and spoke to "Susan," who said she would call her back soon. (*Id.* ¶¶ 22.) By then it was 11:00 a.m. and time for the "count," during which no traffic can leave the facility. (*Id.* ¶ 23.) Sergeant Stokes told the plaintiff to check back after "count," which he did. (*Id.* ¶ 24.) By that time it was noon. Stokes called the medical department again and was told to send the plaintiff to intake for transport to his appointment. By the time the plaintiff was handcuffed and loaded for transport, it was 12:45, and he did not reach the Tennessee Retina Center until after 1:15 p.m. Because he was so late, his surgery had been cancelled and had to be rescheduled. The plaintiff further alleges that he continues to suffer pain and problems with his vision. As of the date he filed the PSC, his surgery

had not been rescheduled. (*Id.* ¶¶ 25–27.)[3]

The plaintiff states that the scheduling of his surgery involved "a lot of work . . . by the medical personnel" at RMSI. (Doc. No. 63-3 ¶ 34.) He does not assert any new claims against any medical personnel at RMSI based on the denial of medical care. Instead, he alleges that an unidentified corrections officer ("C.O.") told the plaintiff that it was "too late in the day for a surgery appointment and he had things to do that day." (*Id.* ¶ 36.) Although the C.O. knew the plaintiff was scheduled for surgery at noon, they did not leave the prison until after 12:30. (*Id.*) The plaintiff avers that the C.O., despite knowing that the plaintiff was scheduled for surgery, intentionally and purposefully delayed transporting him. (*Id.* ¶ 38.) The plaintiff seeks to bring a new claim against this unidentified C.O. and other unknown individuals responsible for the delay and cancellation, for deliberate indifference to the plaintiff's serious medical needs. Attached to the PSC is a copy of the plaintiff's Inmate Grievance related to this event, dated October 26, 2022, requesting the names of the individuals responsible for the transportation delay resulting in the cancellation of his appointment. (Doc. No. 63-4.) The plaintiff states in the PSC that he "filed a timely grievance and is awaiting a response from that." (Doc. No. 63-3 ¶ 30.) Nothing in the record indicates whether, while the motion has been pending, the plaintiff has fully exhausted administrative remedies related to the proposed new claim.

All of the already named defendants oppose the plaintiff's Motion to Supplement on the grounds that (1) the plaintiff does not provide any "readily ascertainable analysis" of why he should be permitted to supplement, instead stating only that supplementation will not prejudice the defendants; (2) the plaintiff brings his PSC more than a year after the filing of the original

---

[3] A subsequent filing by the plaintiff states that he underwent surgery on November 28, 2022. (*See* Doc. No. 58, at 1.)

Complaint, eight months after the filing of the FAC, and more than two months after the filing of the SAC, and allowing the plaintiff to amend now would cause further delay and result in undue prejudice to the existing defendants; (3) the PSC does not cure any of the deficiencies identified in the pending dismissal motions; and (4) the new claim based on the new allegations has not been properly exhausted, as the plaintiff himself admits in the PSC that he is "awaiting a response" to his initial grievance. (*See* Doc. No. 72; *see also* Doc. Nos. 74, 75 (adopting the reasoning set forth in Doc. No. 72, Centurion's Response).)

**II.    LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 15(d), a court may permit a party to file a supplemental pleading, "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Thus, a motion to supplement, in contrast to a motion to amend, seeks to add allegations pertaining to events arising after the original complaint was filed. *Griffin v. Cty. Sch. Bd.*, 377 U.S. 218, 227 (1964). "[I]t follows, of course, that persons participating in these new events may be added if necessary." *Id.*

The standard for granting leave to supplement under Rule 15(d) is the same as the standard governing leave to amend under Rule 15(a)(2). *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002). Under both, leave to amend should generally be "freely give[n] . . . when justice so requires." *Harris v. Davidson Cty. Sheriff*, No. 19-5041, 2019 WL 7573883, at *3 (6th Cir. Dec. 11, 2019) (quoting Fed. R. Civ. P. 15(a)(2). "Under this standard, leave to amend a complaint may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Ultimately, the decision of whether to permit a supplemental pleading is within the court's discretion. *Id.* (citing *Miller v. Champion Enters., Inc.*,

346 F.3d 660, 671 (6th Cir. 2003)).

### III.  DISCUSSION

The court's exercise of its discretion under Rule 15(d) must be guided by the animating principle behind the Rule, which is "to make pleadings a means to achieve an orderly and fair administration of justice." *Griffin*, 377 U.S. at 227. Thus, a court may deny a motion to supplement where it contains "a new legal theory, not just events that occurred after the complaint." *Koukios v. Ganson*, No. 99-4060, 2000 WL 1175499, at *2 (6th Cir. Aug. 11, 2000). In this case, the plaintiff seeks to supplement the complaint in this action to raise a wholly new claim, against new defendants who have not even been identified, based on a new event that took place at least seven months after the events alleged in the operative pleading. Although the proposed new claim, like the existing claims, involves purported deliberate indifference to medical needs, it is asserted against individuals who are not medical providers and who have no responsibility over medical providers or for setting policy relating to the provision of medical care. The pursuit of a new claim that is only tangentially related to the deliberate indifference claims asserted in the first three iterations of the plaintiff's pleading would make the pursuit of this case unduly complex and fractured.

Permitting the proposed amendment would also entail significant delay, which would further postpone resolution of this case and unfairly prejudice the existing defendants. First, the new defendants have not even been identified. Identifying and then serving them could take a significant amount of time. Second, the court would need to conduct an initial screening of the new claim to determine whether the plaintiff states a colorable claim for relief against the proposed defendants and whether he should be permitted to pursue the claim at all. This delay would lead to further fracturing of the orderly administration of this case. Finally, the current defendants have pending dismissal motions, and it is unclear at this juncture whether and to what extent their

motions are meritorious.

The court must "apply Rule 15(d) in a manner aimed at securing the just, speedy, and inexpensive determination of every action." *Cooper v. Bower*, No. 5:15-CV-P249-TBR, 2017 WL 3389521, at *2 (W.D. Ky. Aug. 4, 2017) (citation omitted). The court finds in light of the considerations referenced above that permitting the proposed amendment in this case would cause undue delay and render the resolution of this case unnecessarily complex and fragmented. If the plaintiff still seeks to pursue the new claim identified in the PSC, the plaintiff will be required to file a new lawsuit against the new defendants—once he has fully exhausted his administrative remedies and ascertained the names of the individuals against whom he seeks to pursue the claim.[4]

## IV. CONCLUSION

In light of these considerations, the plaintiff's motion (Doc. No. 63) is hereby **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

---

[4] Regarding the defendants' argument that denial of the Motion to Supplement is required based on the plaintiff's failure to exhaust prior to filing that motion, the court has no way to predict at this point whether the claim has been exhausted in the interim. However, if it has not been exhausted, further delay would ensue, which further counsels against permitting the amendment in this case.